STATE OF MISSOURI, RESPONDENT, v. JAKE TAYLOR, APPELLANT.*

Springfield Court of Appeals. Opinion filed September 23, 1929.

*Corpus Juris-Cyc References: Bail, 6CJ, section 366, p. 1072, n. 49; section 381, p. 1078, n. 43.

*M. G. Gresham* and *Bailey & Bailey* for appellant.

884

*M. E. Montgomery* for respondent.

BAILEY, J.—This is a proceeding by *scire facias* to enforce the penalty on a forfeited recognizance. Plaintiff had judgment and defendant appeals.

The record shows that on the 8th day of November, 1926, one Orville Taylor was charged with highway robbery and was brought before Joe W. Myers, Justice of the Peace; he became the principal and defendant the bail in the bond on which this proceeding is based, by the terms of which bond, defendant was bound for the appearance of the said Orville Taylor in circuit court on the 26th day of November, 1927. The bond and all proceedings were certified by the justice to the clerk of the circuit court. The principal, Orville Taylor, failed to appear as required and the State now seeks to collect the penalty of the bond in the sum of one thousand dollars.

The answer of defendant contains the following:

"That, prior to the disappearance of defendant, Orville Taylor, the said Jake Taylor, as bondsman for the said Orville Taylor, surrendered the said Orville Taylor to the Constable of Richland Township, Scott county, Missouri, and advised the said Constable where the said Orville Taylor could be found and that the said Constable, in pursuance of the directions of this defendant, went immediately and placed the said Orville Taylor under arrest, accepted such surrender and took the person of said Orville Taylor into his possession and custody, under the charge and information in this cause and referred to in said *scire facias*."

At the trial defendant testified to a conversation held with Brown Jewell, the Constable, as follows:

"Orville Taylor is my son. I know Brown Jewell, Constable of Richland Township. I signed the bond in question. My son did not appear in Judge Myer's Court on the 26th of November. No one called and he was re-arrested before that time. He was gone on the 26th. Brown Jewell came to my home looking for Orville Taylor about the 18th or 19th, some time between the 15th and 26th. He asked me about Orville Taylor and he said he had another warrant for him and I says, 'Well, Orville Taylor is down about the Frisco Depot or White Front Restaurant, I expect; he stays down there a big part of the time. If there's another charge against him I am going to turn him over to you on this bond; you will find him down about the Frisco; I want to turn him over to you on the bond.' I think he said he would accept it. He says, 'If you want to make him bond, follow me to Benton.' I says, 'Just take him on to Benton, I cannot do nothing for him, he is making us so much trouble, I can't follow him and I can't do nothing for him.' That is most of the conversation. He came up in a hurry looking for Orville Taylor, asking me where he could find him, and I told him where I thought. 'I told him Orville give me a good deal of trouble and if there was another charge against him he would find him at the Frisco, and I wanted to turn him over to him on the bond I was on.' That was the bond for his appearance in Joe Myers' Court, the bond in controversy here."

On cross-examination he testified; "I did not get a copy of the bond from the Justice, nor ask for it, I think I have repeated pretty well all the conversation I had with Brown Jewell. I don't know whether Brown Jewell went to White Front Restaurant or not. I was not there; I understood he went down and arrested him. I have not seen Orville Taylor since then. I do not know where he is."

Defendant's witness, Brown Jewell, the constable, was offered as a witness to show that he went to Jake Taylor's house with a warrant for the arrest of Orville Taylor and that defendant told him that he wanted to turn Orville Taylor over to him under the bond and that he went to the place designated by defendant and there found and arrested Orville Taylor and took him into custody "under the bond before Judge Myers and under the warrant that he had" and that afterwards, Orville Taylor, being in custody ran away from him. Although the trial court sustained an objection to this offer, the witness was permitted to testify as to what occurred on the day he undertook to arrest Orville Taylor as follows:

"By THE COURT: What did you do with Orville Taylor? A. I arrested him.

"By THE COURT: Did you read a warrant to him? A. No, sir; I told him there had been a paper issued for him that day, and I had

been ordered to bring him to the City Hall by the Sheriff; do you want me to tell all of it?

"By the Court: Tell what you did. A. He says, 'What kind of paper is it?' I says, 'I understand there's been another paper issued for you today, been an indictment, and your father told me to come down and take you; that's what I will have to do, Orville, I am mighty sorry.'

"Mr. Montgomery: I want to object to that and ask that it be stricken out for the reason it shows it wasn't an execution of anything else than a *capias* which he had received from the Sheriff, on an entirely separate matter.

"By the Court: Well, I am not striking out anything; of course, the conversation between Orville Taylor and this witness, I don't know how the State of Missouri would be bound by that.

"Q. You did then take him, as I understand, under the bond?

"Mr. Montgomery: I object to that.

"By the Court: Yes, court will sustain the objection."

It seems unnecessary to set forth more of the evidence.

Error is assigned because the trial was to a jury and that since according to defendant, the hearing on a *scire facias* on a forfeited recognizance should be before the court and there was no waiver by defendant, a new trial should have been granted on defendant's motion. Defendant's theory is that the trial court was prejudiced against him and if he had known at the time of trial that the law required the hearing before the court, without a jury, he would have taken a change of venue. In the first place we find no authority for the proposition that the trial of a proceeding to collect the penalty of a bond on *scire facias* must be before the court, without a jury. The case of State v. Hoeffner, 124 Mo. 488, cited by defendant, merely holds that the defendant in a proceeding of this kind, is not entitled to a jury trial under the Constitution of this State. In other words, the trial court may refuse a jury trial. But it does not follow that if the court and all parties concerned agree to a jury trial, that such proceedings are irregular or void. Defendant consented to the trial by jury and, since this proceeding is purely civil in character and, "but a continuation of an original proceeding to enforce the collection of a debt confessed" (State v. Hoeffner, supra, l. c. 490), defendant was in no wise prejudiced by the jury trial. The only suggestion of prejudice is that defendant might have taken a change of venue had he known the proceeding should have been before the court without a jury. There is a serious question as to whether defendant would be entitled to a change of venue in this matter. [See Sec. 1357, R. S. Mo. 1919; Sutton v. Cole, 155 Mo. 206, 55 S. W. 1052.] In any event, a mistaken impression of defendant's counsel as to his legal rights would be of no avail to defendant. Since the

law does not prohibit a jury trial in a *scire facias* proceeding to enforce the penalty of a recognizance against the bail, we hold defendant is bound by his action in trying the case to a jury without objection.

Error is assigned in the giving of plaintiff's instruction A, which in effect informed the jury that if they found from the evidence that defendant signed the bond sued on and that Orville Taylor failed to appear before the justice on November 26, 1926, then their verdict must be for plaintiff. These facts were admitted and therefore the instruction amounted to a directed verdict. Defendant offered an instruction on his theory of the case setting forth that, if the jury found that defendant advised Brown Jewell, the constable, he did not want to stand as bondsman for Orville Taylor any longer, and wanted to give him up to the constable, and that he told the constable where the said Orville Taylor could be found, and the constable went to such designated place and there found the said Orville Taylor and took him in custody under the charge set out in the *scire facias,* then the verdict should be for defendant, although Orville Taylor escaped from the constable. Error is charged in the refusal of this instruction. Both these assignments rest on the theory that defendant produced evidence tending to prove a surrender by him of his principal to a proper and lawful officer, thereby discharging his liability on the bond. The manner of surrendering a prisoner or principal by his bail is prescribed by statute, as follows:

"Sec. 3923. Surrender of principal, how made.—When a bail desires to surrender his principal, he may procure a copy of the recognizance from the clerk, by virtue of which the bail, or any person authorized by him, may take the principal in any county within this state." . . .

"3925.—What deemed a surrender.—The bail must deliver a certified copy of the recognizance to the sheriff with the principal, and the sheriff must accept the surrender of the principal, and acknowledge such acceptance in writing." The provision requiring the bail to deliver a certified copy of the recognizance to the sheriff with the principal, has been construed to be directory only. [State v. Mudd, 232 Mo. 564, 134 S. W. 562.] In that case, however, the bail informed the sheriff that he believed his principal intended to run away and requested the sheriff to come and get him, stating that he would pay the expenses and that he wanted off the bond. The sheriff complied with the request, but in the meantime the bail caused the arrest of his principal by the town marshal who in turn delivered the principal to the sheriff, who took him into custody and placed him in the county jail. After being in jail on the original charge for about three months, the principal escaped and the recognizance was forfeited. In the course of the opinion construing the above statute our Su-

preme Court said, "As said by this court in the Murmann case, supra (124 Mo. 502), we are not to be understood as countenancing a loose practice in the matter of the surrender of a principal by the surety, but where the uncontradicted evidence shows that the surety acted in good faith and did in fact deliver the principal to the sheriff, who accepted him unconditionally as a prisoner, and placed him in the jail where he remained in the exclusive custody of the sheriff until the time of his escape, we are of opinion that such facts entitled the surety to his discharge and constituted a sufficient answer to the *scire facias.*"   [State v. Mudd, 232 Mo. l. c. 578-9.]

Now it will be observed that the statute (sec. 3925, supra) refers only to the *sheriff* as the proper person to whom a surrender of the principal may be made by the bail. It is, therefore, contended by respondent that a surrender to the constable is not a compliance with the statute. The term sheriff may be construed as generic and sufficiently broad and comprehensive as to include constables.   [Huhn v. Lang, 122 Mo. 600, l. c. 606, 27 S. W. 345.]

Whether that be true or not, we think the evidence in this case, including the offer of proof, insufficient to constitute a surrender by the bail of his principal such as would relieve the bail from his obligations under the forfeited recognizance. Our Supreme Court has cautioned against, "countenancing a loose practice in the matter of the surrender of the principal by the surety."   [Supra.]   In the case at bar the constable was searching for the son Orville Taylor in order to place him under arrest on a wholly different charge. He went to defendant's home and defendant refused to help his son further but told the constable where he might be found and that he "wanted to turn him over on the bond." He made no effort to actually deliver his son and principal to the constable further than advising the constable where he might be found and then only after he knew his principal was to be arrested on another charge. The principal was clearly arrested because the constable had been directed by the sheriff to arrest him. The attempt by defendant to relieve himself on the bond under the circumstances is far from a compliance with the surrender statute. The arrest on a different charge and escape after arrest is not sufficient to constitute an effective release of the surety. It is said that, "If, while in custody on another charge he (the principal) escapes, or is again discharged on the bail, and is a free man when called upon his recognizance to appear, his bail are bound to produce him."   [6 C. J., pp. 1026-7.]   To hold that a bail may wait until his principal is about to be placed in custody on a new and different charge and then, without in any manner complying with the statute, simply advise the officer that he wants off the bond and directing him to go ahead and arrest his prin-

cipal (which the officer had authority to do otherwise under his *capias*) would indeed result in countenancing a loose practice never intended by our laws.

We think it must be the intent of the law that before a surrender is sufficient to relieve the bail, it must be fairly proven that the bail, acting in good faith, actually delivered his principal to the proper officer and that such officer unconditionally, and for the purpose of releasing the bail, accepted the surrender and took charge of the prisoner. If a bail may be released under the circumstances as shown by the evidence in this case, then the protection afforded the State in the matter of recognizance becomes a practical nullity. Such practice would not only permit our statute to be entirely ignored but would tend to encourage fraud and collusion in such matters. The judgment should be affirmed. It is so ordered.

*Cox, P. J.,* and *Smith, J.,* concur.

[*]Corpus Juris-Cyc References: Replevin, 34Cyc, p. 1355, n. 13.